PACIFIC IMP. CO. v. CARRIGER et al.*

S. F. No. 2920; March 18, 1902.

68 Pac. 315.

Estoppel.—Evidence That a Subsequent Purchaser of Real Estate acquired the legal title with knowledge of the claim of a prior purchaser, who had not obtained the legal title, but who acquired his interest in the lands from the same source of title, and that the prior purchaser had made improvements on the land, and that the subsequent purchaser allowed him to continue making such improvements, and to use the land for a period of eight or nine years, without notifying· defendant of any claim to the land or warning her not to improve the same, is sufficient to estop the subsequent purchaser from recovering the property.

APPEAL from Superior Court, Sonoma County; Albert G. Burnett, Judge.

Suit to recover real estate by the Pacific Improvement Company against Lizzie J. Carriger and others. From a judgment in favor of defendants, and from an order denying a new trial plaintiff appeals. Affirmed.

Platt & Bayne and J. E. Foulds for appellant; Lippitt & Lippitt for respondents.

CHIPMAN, C.—Plaintiff sues for the possession of certain lots in the town of El Verano, Sonoma county. The answer of defendants denied plaintiff's ownership, set forth certain facts from which it was claimed that· the equitable ownership of the land was in defendant Lizzie J. Carriger, and also pleaded that plaintiff is estopped to claim title to the land. At the trial plaintiff dismissed the action as to all the defendants except Lizzie J. Carriger. The court found: (1) That at the commencement of the action plaintiff was the owner of the legal title to the lots in controversy. (2) That about December 21, 1888, Caleb C. Carriger and Lizzie J. Carriger, his wife, entered into an agreement with George H. Maxwell to sell to him their home place, adjoining the town of El Verano, and on April 30, 1889, Maxwell paid $500 on said contract.

*Rehearing denied April 17, 1902.

Thereafter, on May 25, 1889, the Sonoma Valley Improvement Company entered into an agreement and bond with the said Carrigers whereby the said company agreed to grant and convey to the said Carrigers, on or before December 31, 1890, the premises in dispute, free and clear of a certain mortgage executed by said Maxwell to Charlotte F. Clarke, and the Carrigers agreed that, if Maxwell should purchase the said Carriger ranch, according to the aforesaid agreement between Maxwell and the Carrigers, the latter would pay the said company $3,692 as payment in full for said lots, and this amount was to be deducted from the purchase price of the Carriger ranch; and the said agreement and bond of the said company further provided that, if Maxwell did not purchase the Carriger ranch, then the Carrigers should be entitled to a conveyance of the said lots without any charge whatsoever; and the agreement also provided that the Carrigers should be entitled to the immediate possession of said premises. (3) That the company put the Carrigers into the immediate possession of the premises, and they then and there so entered into possession, and they and their assignees and this defendant have ever since remained in the continuous, undisturbed, open and notorious possession of said premises under a claim of title to the same, and hostile to the title of plaintiff, and have made valuable improvements thereon; and defendant Lizzie was at the time of the commencement of the action in possession, she being the sole owner of all the right, title and interest in and to the said lots under said bonds and agreements. (4) That the Carrigers fully performed their contract with Maxwell, and at the expiration of the time therein provided they demanded that he cause, on behalf of the company, the necessary conveyances to be made to them of said premises, and he agreed to do so, but failed. (5) That in pursuance of said agreements with Maxwell the said company surveyed the lands of the Carriger ranch into town lots, and performed other labor on the land, and at an auction sale of land at El Verano offered for sale and actually disposed of portions of the said Carriger ranch, though no deeds were ever made therefor. (6) That at the time Maxwell and the Carrigers entered into the said bond and agreement Maxwell was acting in the interest of said company, of which he was the vice-president, and the duly authorized managing director; and after the

transfer of the property of the Sonoma Valley Improvement Company to plaintiff, the Pacific Improvement Company, he became and acted as the agent of the said Pacific Improvement Company. (7) That during the possession of defendant of said lots she paid taxes thereon for one year, and for the eight years preceding the commencement of the action the property was assessed to plaintiff as the owner thereof, and plaintiff paid the taxes so assessed, and during all said times plaintiff was the owner of the legal title to said premises. (8) That plaintiff during all the time of defendant's possession had knowledge of the agreement between Maxwell and the Sonoma Valley Improvement Company with the Carrigers, and through its (plaintiff's) officers, agents and employees had knowledge of the continuous possession of defendant of the said lots, and her claim of ownership under said agreements; and during all said time until August 3, 1899, the Sonoma Valley Improvement Company and plaintiff "did not, by word or deed, challenge the right of said defendant to the ownership of said lots, or notify her to vacate the said lots, or demand the possession of the said lots from her or her grantors, or in any manner or form claim or exercise any interest or ownership therein, except by the payment of taxes thereon." As conclusions of law the court found: (1) That defendant did not obtain title by adverse possession; (2) that plaintiff is estopped from denying defendant's title, or of setting up title in its behalf; (3) that defendant is entitled in equity to the ownership of the premises and to have her title quieted. Judgment was accordingly entered, from which, and from the order denying its motion for a new trial, plaintiff appeals.

Plaintiff challenges all the findings except the first and seventh as unsupported by the evidence, and confines the discussion by the single question of estoppel, claiming: First, that plaintiff is not estopped, because it is not bound by the agreement of May 25, 1889, there being no consideration for the promise of the Sonoma Valley Improvement Company to convey the El Verano lots to the Carrigers; second because the record discloses no elements of equitable estoppel; third, plaintiff was not guilty of such laches as would constitute ground of estoppel. On December 15, 1887, Maxwell and certain other persons entered into an agreement to organize one or more corporations to purchase certain land and sub-

divide it into town lots. One of these corporations was the Sonoma Valley Land Company. When this agreement was made, Maxwell represented that he had a contract to purchase the Clarke tract, mentioned in the findings, and it was agreed that this tract should become part of this syndicate's property. Maxwell made a payment of $10,000 to the owner, took a deed to the land in his own name, and gave his mortgage for $65,000 to secure the balance of the purchase price. This deed was dated May 4, 1888. On May 15, 1888, Maxwell formed the Sonoma Valley Improvement Company, and, in fraud of his syndicate associates, he deeded the Clarke tract to that company on May 16, 1888, and it went into possession, and on it laid out the town of El Verano. The transaction was fully exploited in a suit brought by one Bacon for the stockholders of the Sonoma Valley Land Company against the Sonoma Valley Improvement Company and others. On December 31, 1888, Maxwell entered into the agreement with the Carrigers for the purchase of their land, which joined the Clarke tract, and was also available for town lots. Maxwell was the vice-president of the Sonoma Valley Improvement Company, and its managing director, until May 27, 1890, and Chas. F. Crocker and F. S. Douty were directors in the company, and, defendant claims, were also directors of the plaintiff company. The Sonoma Valley Improvement Company exercised many acts of control over the Carriger land, some of which are mentioned in the findings; and on May 25, 1889, it agreed in writing with the Carrigers to sell them lots 3, 4, 5 and 6 of the Clarke tract, comprising eighteen acres, free and clear of the mortgage held by Mrs. Clarke, and the Carrigers went into immediate possession under the agreement, and made valuable improvements on the lots. The facts set forth in findings numbered 2 to 6, inclusive, omitting for the present the latter part of the finding 6, referring to plaintiff, are sustained by the evidence. There is evidence, in our opinion, warranting the finding that in the purchase of the Carriger tract Maxwell was acting for the Sonoma Valley Improvement Company, of which he was the vice-president and managing director, and that this company was interested in the land when it made the agreement with the Carrigers. They so understood it, as was testified; and the conduct and actions of the company, assuming direction and control of the Carriger land, though not dispossessing the

Carrigers, were calculated to confirm the Carrigers' understanding of the transaction. There was a modification of the Maxwell-Carriger contract of advantage to the company, as interested in the property, which defendant claims was a part of the consideration for the agreement of the company to sell the lots to the Carrigers. This was an extension of the time of payment, and was executed on the same day the company entered into the agreement and bond. But, aside from this circumstance, the written contract of the company recites that it is made "for a valuable consideration," and it is inconceivable that the company would have made such an agreement without it had an interest in the contract of sale which it regarded as of some value. If it was improvidently made, there is nothing to show that the company was without authority to make it, and it is no fault of defendant that it was not carried out. Maxwell and the company may have had some motive satisfactory to themselves for not having this agreement transferred to the company by some record, but all the circumstances indicate that it was in fact an agreement for the benefit of the company, and, if its minutes failed to show any assignment to it, or any ratification of the bond executed by the company, the fact does not compel the conclusion contended for by appellant.

Appellant claims that there is no evidence to support the finding of the court that, after the transfer of the property in dispute by the Sonoma Valley Improvement Company, Maxwell became and acted as the agent of the plaintiff (finding 6); and that during the time of defendant's possession plaintiff had knowledge of the Maxwell-Carriger agreement, and had knowledge of defendant's possession, and made no objection thereto, and asserted no claim to the land, and did not dispute defendant's title by any act, except to pay the taxes (finding 8). The evidence on this branch of the case is somewhat involved, and is circumstantial, rather than positive and direct, in its support of the inferences drawn by the court. Maxwell conveyed the Clarke land to the Sonoma Valley Improvement Company May 16, 1888; the Bacon suit was commenced June 4, 1888; lis pendens recorded June 6, 1888; decree of the trial court was entered October 8, 1890, and was affirmed here August 17, 1892. The decree directed was a conveyance by the Sonoma Valley Improvement Company of the Clarke land to the Sonoma Valley Land Com-

pany, the equitable owner of the land, on payment by the latter to the former, for the use of Maxwell, of $10,000, the payment made by him to the Clarkes; the conveyance to be subject to the Maxwell mortgage to Mrs. Clarke. It does not appear that the Sonoma Valley Improvement Company ever executed a deed as directed. But it appears that after the decree of the lower court was entered in the Bacon suit, and pending the appeal, the Pacific Improvement Company, plaintiff, purchased the outstanding titles to the property, and a deed was made to it by Bacon and other stockholders in the Sonoma Valley Land Company and the parties to the syndicate agreement with Maxwell, this deed being dated November 18, 1891, and recorded December 24, 1891, nine months before the Bacon judgment was affirmed. The Sonoma Valley Improvement Company, on the same day, also conveyed the Clarke land (including the lots in question) to the Pacific Improvement Company by deed dated November 18, 1891, recorded December 24, 1891; and it also made another deed to plaintiff, dated June 30, 1892, recorded September 1, 1892. This latter deed was executed a month and a half before the Bacon decree was affirmed, and it is not shown why it was made. It appears, therefore, that plaintiff became interested in the property as early as November, 1891, and, as these deeds must have been the result of business negotiations, plaintiff must have concerned itself about the property some time before. The Pacific Improvement Company had an agent at El Verano (one Riser) "since 1891," as he testified, and it was he who in 1899 served the notice of plaintiff on defendant to surrender possession. He testified that he received his orders "most of the time from Mr. Maxwell, he representing, as I understood, the Pacific Improvement Company." He testified that since August, 1898, he received all his orders directly from Pacific Improvement Company. "Previous to that time they came to me through Geo. H. Maxwell. My wages were paid by the plaintiff. Prior to my acting for the plaintiff, I served as agent for the Sonoma Valley Improvement Company, taking my orders from Mr. Maxwell. . . . . All the interests of the Sonoma Valley Improvement Company, as far as I know, were merged in the Pacific Improvement Company." The agreement and bond of the Sonoma Valley Improvement Company with the Carrigers to convey these lots was recorded April 30, 1889, and

was constructive notice of their claim upon the land. Maxwell knew of the possession of defendant and her predecessors of the land in controversy, and I knew it had been fenced by them, and an orchard planted on it; and Riser testified that he was never directed to make any claim on the land for the Pacific Improvement Company, or to notify the Carrigers to surrender possession, until 1899, when he served written notice. The knowledge of defendant's claim to the land by Riser and Maxwell must be held to be the knowledge of the Pacific Improvement Company, and it must be presumed that when the Pacific Improvement Company was negotiating for the purchase of the outstanding titles of the Clarke tract, and took deeds from defendant's grantor before it knew what the final outcome would be in this court, it took the title with notice of defendant's claim. It appears that the Sonoma Valley Improvement Company continued to make contracts for the sale of and made deeds to these Clarke lands, and there are in evidence deeds running along from December, 1891, to March, 1894, which were recognized and protected by the Pacific Improvement Company, and deeds of confirmation were made to the parties by this company. Counsel for plaintiff, Mr. Shay, made in open court a statement as follows: "After the decision in that case [Bacon v. Sonoma Land Co. et al.], the Pacific Improvement Company purchased the outstanding titles, and since that date all contracts and improvements have been made in the name of the Pacific Improvement Company. Where parties had made purchases of the lands or lots or blocks from the Sonoma Valley Improvement Company prior to the decision in the Bacon case, those purchases were all recognized by the Pacific Improvement Company; and, when deeds were made later, in each instance a double deed, you might say, was made—one by the Pacific Improvement Company, conveying the legal title then held by it; the other by the Sonoma Valley Improvement Company, conveying whatever title it might have, so as to give the purchaser clear title." No explanation is offered as to why this course was not pursued toward defendant, or some adjustment of the conflicting interests attempted during the eight or nine years of defendant's possession and claim with plaintiff's knowledge thereof. In a certain sense the two companies appeared for some time to have acted together with reference to the lands, both before and after the final determination of the

Bacon case by this court. Defendant claims, as an important circumstance in the case, that some of the stockholders and officers of the Pacific Improvement Company were also stockholders and officers of the Sonoma Valley Improvement Company, namely, Chas. F. Crocker, F. S. Douty, Wm. Hood, and perhaps others. There is evidence that Chas. F. Crocker and F. S. Douty were directors in the Sonoma Valley Improvement Company at its organization, and there is evidence that Douty was the secretary of the Pacific Improvement Company in 1899, and signed the notice given defendant to surrender possession. Aside from this circumstance, there is sufficient evidence to justify the inference of the trial court that the plaintiff had knowledge of defendant's contract with the Sonoma Valley Improvement Company, and her claim to the lots in question. It is not material that defendant was not in actual possession, for it was well known to the persons representing these two companies that she and her husband fenced the land, some eighteen acres, planted an acre to orchard, and farmed and leased the balance, and had exclusive control of the land all the time. Nor is it material to charge plaintiff with notice that the precise nature and extent of Riser's and Maxwell's authority should have appeared. It did appear that they represented the company —Riser as an agent for several years, and Maxwell part of the time assuming to represent the plaintiff, and giving Riser directions, the latter understanding that Maxwell represented that company, and taking orders from him as its representative.

Plaintiff relies especially on the lis pendens recorded in the Bacon suit June 6, 1888, as notice to defendant, when the Sonoma Valley Improvement Company made its contract with the Carrigers, dated May 25, 1889, and it is claimed that this contract was made with notice of the adverse claim of Bacon and the other stockholders of the Sonoma Valley Land Company. The Carrigers were not the parties to that suit, and there is no evidence that they had actual knowledge of its pendency. How far it would charge them with notice as between them on the Sonoma Valley Land Company, where the latter was directly concerned, might raise a different question from the one we have here. Conceding that the Carrigers had constructive notice of the claim of the Sonoma Valley Land Company, which was disputed and being contested by the Sonoma Valley Improvement Company, grantor of the

Carrigers, the fact remains that plaintiff bought into that lawsuit with knowledge of the Carrigers' claims, and we do not think plaintiff can take cover behind the lis pendens in a suit to which neither it nor the Carrigers were the parties, and in which at that time plaintiff had no interest. Under the circumstances and facts as they appear, the notice by lis pendens does not prevent the defendant from relying upon her equitable title as against plaintiff.

The record fails to show that the Sonoma Valley Improvement Company ever conveyed to the Sonoma Valley Land Company as directed by the decree in the Bacon suit, and it also fails to show whether the $10,000 was paid by the latter company to the former, as the decree ordered. No doubt, in purchasing the outstanding titles, plaintiff had to pay this money to the Sonoma Valley Improvement Company before it would convey its title, for that was the condition of the decree. But the record shows that plaintiff's title comes from defendant's grantor subsequent to defendant's agreement with plaintiff's grantor, and plaintiff concluded its purchase before this court had affirmed the decree. This shows that it was indifferent to the decision, since it owned all rights involved in the case, and relied on its purchase of these interests, rather than on the chance of the decree being affirmed. With these facts before us, is plaintiff estopped by its conduct and laches from claiming title at this late day? We think the answer of the trial court was a correct solution of the question. The evidence was that the purchasers of the land in controversy took their title from the same source of plaintiff's title, and prior to plaintiff's title; then fenced it, and planted an orchard, cultivated the remaining land after plaintiff's rights had attached, and in full faith in their title; plaintiff stood by and saw this work proceeding year after year for eight or nine years, and during all this time it was exercising ownership over the other unsold portions of the Clarke tract, was confirming contracts and deeds of the Sonoma Valley Improvement Company to persons other than defendant, and at no time notified defendant or her predecessors of any claim to the disputed land, or forbade the exercise of acts of ownership over it, or warned defendant or her predecessors not to spend their money on it in improvements. Without discussing the principles governing estoppel and laches, we think the decision of the trial court that plaintiff is es-

topped from denying defendant's title or setting up title in itself is warranted by the evidence. It is advised that the judgment and order be affirmed.

We concur: Gray, C.; Cooper, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.